**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

HAMID ALI BUTT,                          :

    Petitioner,                           :

vs.                                      :        CA 08-0672-CG-C

ERIC HOLDER, Attorney                    :
General of the United States, et al.,[1]

                                         :

    Respondents.

**REPORT AND RECOMMENDATION**

Hamid Ali Butt, a native and citizen of Pakistan ordered removed from the United States and presently being detained by the United States Immigration and Customs Enforcement ("ICE") arm of the Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[2] This matter has been referred to the undersigned for entry of

---

[1] Eric Holder became the eighty-second United States Attorney General on February 3, 2009. Therefore, Holder is substituted for Michael B. Mukasey as the proper lead respondent in this case. Fed.R.Civ.P. 25(d) ("The officer's successor is automatically substituted as a party. . . . The court may order substitution at any time, but the absence of such an order does not affect the substitution.").

[2] Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he

a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be **GRANTED**, on the basis that the removal of petitioner from the United States is not reasonably foreseeable, and that petitioner be granted his immediate supervised release from ICE under conditions to be enumerated by ICE.

## FINDINGS OF FACT

1. Butt is a native and citizen of Pakistan who entered the United States on May 27, 1982 as a non-immigrant. (Doc. 7, November 13, 2008 Decision to Continue Detention; *see also* Doc. 1, at 2) Butt adjusted his status to that of Legal Permanent Resident on October 11, 1996. (Doc. 7, November 13, 2008 Decision to Continue Detention)

2. Butt has been convicted of several criminal offenses since entering the United States, including possession of a controlled substance, fraud, and unauthorized use of a vehicle. (*Id.*) Petitioner admits in his complaint that he was charged "with several crimes from 1997 to 2007." (Doc. 1, at 2; *see* Doc. 7, August 27, 2008 Decision to Continue Detention ("A review of your criminal history reveals that from 1997 to 2007, you have been convicted of crimes ranging from motor vehicle violations and Identity Theft

---

should name his warden as respondent and file the petition in the district of confinement.").

to Criminal Possession of Marijuana and Attempted Criminal Possession of a Controlled Substance. Dispositions for those cases have ranged from monetary fines and a suspended license to four years of probation.")) Petitioner was on probation when arrested in Suffolk County New York on or about March 17, 2008; on that date, he was encountered and identified by an ICE officer and a detainer was lodged against him. (*Id.*) Butt was place in ICE custody on April 24, 2008 and, on May 9, 2008, he was ordered removed from the United States by an Immigration Judge. (*Id.*) Petitioner did not appeal the Immigration Judge's removal order to the Board of Immigration Appeals. (*See* Doc. 1, at 2 ("The Petitioner never filed any appeal pertaining to this order of deportation, which made the order final on June 9, 2008."); *compare id. with* Doc. 7, November 13, 2008 Decision to Continue Detention ("On May 9, 2008, you were ordered removed from the United States by the Immigration Judge (IJ). You waived your appeal making the order final on this date."))

   3.  The August 27, 2008 decision to continue detention reveals ICE's position that the Pakistani Consulate had all the information it needed "to issue a travel document." (Doc. 7, August 27, 2008 Decision to Continue Detention, at 2)

> On May 20, 2008, a travel document request was submitted to the Consulate General of Pakistan in New York. Included in the

> request were copies of your Pakistan passport and birth certificate. You were interviewed by a consulate official on June 9, 2008. On June 26, 2008, you were interviewed for a second time and on July 24, 2008, assistance was requested from the Headquarters Travel Document Unit (HQTDU). Since that interview, bi-weekly calls have been placed to the Consulate. The consulate indicated your travel document was pending.
>
> . . .
>
> You will not be released from ICE custody at this time because the Pakistan Consulate is still processing your travel document. **They have the information they need to issue a travel document**. You also have numerous convictions which span over eleven years. You failed to establish that you would not be a flight risk, or threat to society, if released.

(*Id.* at 1 & 2 (emphasis supplied)) To date, of course, no travel document has been forthcoming from the Pakistani Consulate. (*See* Docs. 1, 7 & 9)

    4.    On November 13, 2008, ICE again reviewed petitioner's custody status and determined that his detention should continue. (Doc. 7, November 13, 2008 Decision to Continue Detention)

> This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based upon a review of your file and/or your personal interview and consideration of any information you submitted to ICE's reviewing officials.
>
> . . .
>
> A request for a travel document was submitted to the Embassy

4

>of Pakistan and ICE is currently working closely with the government of Pakistan to obtain a travel document to effect your removal. **ICE believes that your removal is likely within the reasonably foreseeable future.** Accordingly, you are to remain in ICE custody at this time.

(*Id.* (emphasis supplied))

    5.    Following receipt of the November 13, 2008 decision, Butt filed his petition seeking habeas corpus relief, pursuant to 28 U.S.C. § 2241, in this Court on November 18, 2008 (Doc. 1), almost seven (7) months after being taking into ICE custody.

    6.    Despite all of Butt's cooperation with ICE to effectuate his removal from this country (*see* Docs. 1, 7 & 9), including providing ICE with a copy of his Pakistani passport and birth certificate and twice interviewing with Pakistani consulate officials, and bi-weekly calls to the Pakistani consulate by ICE officials (*see* Doc. 7, August 27, 2008 Decision to Continue Custody), the final stumbling block to Butt's successful removal from this country (that is, a valid address in Pakistan) allegedly was not discovered until January 20, 2009, some two months after the filing of the present action (*see* Doc. 7, Declaration of Diane McConnell, at ¶ 5 ("As of January 20, 2009, Mr. Butt has not submitted a valid address in Pakistan, which is a requirement for the government of Pakistan to finalize the identification process.")). An

interview was scheduled with Butt at the Perry County Correctional Center by ICE officials on January 20, 2009 "to acquire a valid address." (*Id.* at ¶ 6) "**Once a valid address is received and the TD is finalized, there are no impediments to effectuate removal to Pakistan.**" (*Id.* at ¶ 7 (emphasis supplied)) ICE officials undoubtedly obtained from Butt on January 20, 2009, the very same information they received from petitioner on September 3, 2008, in regard to a valid address in Pakistan: 515 Mochi Gate Kocha Shea, Lahore, Pakistan. (Doc. 9, August 27, 2008 Decision to Continue Detention, at 3)

## CONCLUSIONS OF LAW

1. In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2. The Supreme Court in *Zadvydas* held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3.  8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a) Detention, release, and removal of aliens ordered removed**

**(1) Removal period**

**(A) In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B) Beginning of period**

The removal period begins on the **latest** of the following:

**(i)** The date the order of removal becomes administratively final.

**(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C) Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention

> during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
>
> **(2)  Detention**
>
> During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the

Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

4.  In this case, the federal respondents implicitly concede, as they must, that the presumptively reasonable six-month detention period has passed. (*See* Doc. 7, at 4 ("The Court of Appeals has held that *Zadvydas* does not set out a *per se* rule that mandates an alien's release after six months.")) Butt's six-month presumptively reasonable removal period began, at the very latest, on June 9, 2008,[3] the date the order of removal became administratively final, *compare* 8 C.F.R. § 1241.1(c) (2007) ("An order of removal made by the

---

[3] The Magistrate Judge equivocates here because the November 13, 2008 Decision to Continue Detention indicates that the order of removal actually became final on May 9, 2008 due to petitioner's waiver of appeal. (*See, e.g.,* Doc. 7, November 13, 2008 Decision to Continue Detention)

9

immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: . . . [u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]") *with* 8 C.F.R. § 1003.38(b) ("The Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge [] shall be filed directly with the Board of Immigration Appeals within 30 calendar days after the stating of an Immigration Judge's oral decision or the mailing of an Immigration Judge's written decision."), and expired on or about December 9, 2008. While, under this factual scenario, Butt filed this action before his presumptively-reasonable detention period expired, that period has now expired. Over three months have elapsed since the presumptively-reasonable six months expired with the federal respondents unable to make any realistic prediction when Butt will be repatriated to his native Pakistan despite the fact that they have actually possessed a valid Pakistani address for petitioner since September 3, 2008. (*Compare* Doc. 9, August 27, 2008 Decision to Continue Detention, at 3 (service page reflects September 3, 2008 service of decision on petitioner and the ICE official's notation of an address for Pakistan) *with* Doc. 7, McConnell declar., at ¶ 7 ("Once a valid address is received and the TD is finalized, there are no impediments to effectuate removal to Pakistan.")). Accordingly, Butt

has been in ICE custody now for almost eleven (11) months since April 24, 2008, ten and one-half of which he has endured since being ordered removed to his native Pakistan.

    5.    In *Zadvydas, supra*, the Supreme Court indicated that "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701, 121 S.Ct. at 2505; *see also id.* at 699-700, 121 S.Ct. at 2405 ("[T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

    6.    The undersigned concludes that Butt has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has now been detained by ICE

awaiting removal for over 11 months (ten and one-half of which has elapsed since the Immigration Judge ordered his removal)--well in excess of the six-month presumptively reasonable period--with no assurance received from the Pakistani Embassy in Washington, D.C. that a travel document is forthcoming. *See Seretse-Khama v. Ashcroft*, 215 F.Supp.2d 37, 48 (D. D.C. 2002) ("Based on this record of the continued detention of petitioner awaiting removal for well over three years (far in excess of the six-month presumptively reasonable period), with no success by the INS (and arguably little effort) in obtaining travel documents, the Court concludes that petitioner has met his burden of showing 'good reason to believe that there is no *significant likelihood* of removal in the reasonably foreseeable future.'")). For its part, ICE has not provided sufficient evidence to rebut Butt's showing. The January 20, 2009 declaration statement of Diane McConnell that Butt will be removed to Pakistan once a valid address in Pakistan is received and the travel document is finalized, is not only called into question by evidence that ICE officials have possessed that Pakistani address since September 3, 2008 (Doc. 9, August 27, 2008 Decision to Continue Detention, at 3) with no travel document forthcoming from the Pakistani Embassy but, as well, does nothing but underscore petitioner's showing that there is no significant likelihood of his

removal in the reasonably foreseeable future. *See Andreasyan v. Gonzales*, 446 F.Supp.2d 1186, 1189 (W.D. Wash. 2006) ("Petitioner has now been detained for more than eight months since his order of removal became final on November 17, 2005. Given the time that has passed since the R & R without the production of travel documents, and given that six weeks have passed since Respondents' last request for a 'few more weeks,' this Court now finds that the Government has not responded with enough evidence to rebut Petitioner's claim that removal is not likely in the reasonably foreseeable future.").

       7.     It is clear to the undersigned not only that there is no significant likelihood of Butt's removal in the reasonably foreseeable future but, as well, that his continued detention does not meet the purposes of the statute. As recognized in *Zadvydas, supra*, the purposes of the statute are ensuring the alien's presence at the moment of removal and preventing danger to the community. *See* 533 U.S. at 690, 121 S.Ct. at 2499 (citation omitted). The respondents have argued that "[p]etitioner's criminal history supports continued detention until removal in the reasonably foreseeable future." (Doc. 7, at 5; *see also id*. at 4, n.1 ("Continued confinement can be justified to assure the alien's presence at the moment of removal or [] if there is a risk of the alien committing further crimes."))

> But by definition the first justification-preventing flight-is weak or nonexistent where removal seems a remote possibility at best. As this Court said in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), where detention's goal is no longer practically attainable, detention no longer "bear[s] [a] reasonable relation to the purpose for which the individual [was] committed." *Id*., at 738, 92 S.Ct., at 1845.
>
> The second justification-protecting the community-does not necessarily diminish in force over time. But we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. . . . In cases in which preventive detention is of potentially *indefinite* duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.

533 U.S. at 690-691, 121 S.Ct. at 2499.

8. Given the risk-of-flight analysis by the Supreme Court in *Zadvydas*, any implicit argument by the federal respondents in this case is adequately countered by the undersigned's earlier determination that petitioner's removal from this country is not reasonably foreseeable.

9. Relevant to the respondents' argument that petitioner represents a danger to the community, the Supreme Court indicated in *Zadvydas* that "once the flight risk justification evaporates, the only special circumstance present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." 533 U.S. at 691-692, 121 S.Ct. at 2499 (citations

14

omitted). Petitioner's criminal history simply does not establish that he is a specially dangerous person. Moreover, there is no evidence of any attendant special circumstance in this case, such as mental illness or a volitional impairment. Accordingly, the respondents' danger-to-the-community argument need be rejected.

      10.    In light of the foregoing, the undersigned recommends that this Court release petitioner from custody, subject to reasonable conditions ICE deems necessary to ensure Butt's appearance and return--including those set forth in 8 C.F.R. § 241.5(a)--pending the issuance of a travel document by the Pakistani Embassy to effectuate his removal to his native country. *See Zadvydas, supra*, 533 U.S. at 700, 121 S.Ct. at 2504 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.").

## **CONCLUSION**

    The Magistrate Judge recommends that this Court grant Hamid Ali Butt's habeas corpus petition filed pursuant to 28 U.S.C. § 2241 and order his immediate supervised release under conditions set forth by the ICE arm of the Department of Homeland Security.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 19th day of March, 2009.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                    s/WILLIAM E. CASSADY
                                                    UNITED STATES MAGISTRATE JUDGE

17